```
 1              UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF VIRGINIA
 2                 Charlottesville Division

 3   UNITED STATES OF AMERICA,          Criminal No. 3:18cr00011

 4              Plaintiff,

 5        vs.                          Charlottesville, Virginia

 6   JAMES ALEX FIELDS, JR.,
                                       3:00 p.m.
 7              Defendant.             March 27, 2019

 8
                TRANSCRIPT OF GUILTY PLEA HEARING
 9        BEFORE THE HONORABLE MICHAEL F. URBANSKI
                UNITED STATES DISTRICT JUDGE
10
     APPEARANCES:
11
     For the United States:    THOMAS T. CULLEN
12                             U.S. Attorney's Office
                               P.O. Box 1709
13                             Roanoke, VA 24008

14                             CHRISTOPHER KAVANAUGH
                               U.S. Attorney's Office
15                             255 W. Main St.
                               Charlottesville, VA  22902
16
     For the Defendant:        LISA M. LORISH
17                             FREDERICK T. HEBLICH
                               Federal Public Defenders Office
18                             401 E. Market St.
                               Suite 106
19                             Charlottesville, VA 22902

20   Court Reporter:           Sonia Ferris, RPR, OCR
                               U.S. Court Reporter
21                             116 N. Main St.  Room 314
                               Harrisonburg, VA 22802
22

23

24
     Proceedings recorded by mechanical stenography; transcript
25   produced by computer.
```

1          THE COURT:  Good afternoon.

2          Ask the clerk to call the case.

3          THE CLERK:  This is the United States of America vs.

4   James Alex Fields, Jr., Criminal Action 3:18cr00011,

5   defendant one.

6          THE COURT:  Good afternoon.

7          This case has been set down for a change of plea

8   hearing.

9          Is the United States ready to proceed?

10          MR. KAVANAUGH:  We are, Your Honor.

11          THE COURT:  And is the defendant ready to proceed?

12          MS. LORISH:  He is, Your Honor.

13          THE COURT:  Okay.  When this case was originally

14   charged, the statute under which it was charged had certain

15   penalties that were available, and as I understand it, the

16   Attorney General has made some determination as to whether or

17   not to seek the death penalty in this case.

18          Let's hear from the United States Attorney.

19          MR. CULLIN:  Thank you, Your Honor.  May it please

20   the Court, Thomas Cullen for the United States.

21          On Friday afternoon, I received a letter from

22   Attorney General William Barr authorizing and directing my

23   office not to seek the death penalty against James Alex

24   Fields, Jr., conditioned on his entering a plea agreement in

25   accordance with the terms directed in a memorandum we sent to

1   his office.  I have a copy of that letter, Your Honor.  We

2   can certainly mark that as an exhibit and introduce it, make

3   it part of the record in this case.

4          THE COURT:  I think it would be appropriate to go

5   ahead and docket that letter and we will docket that letter

6   on the docket in this case.

7          I direct the clerk to docket it in this case.

8          We can either mark it as an exhibit, Kristin, or we

9   can just docket it as a separate docket entry.

10         Can I see it?

11         (Said document handed to the Court.)

12         MR. CULLIN:  As the Court's aware, the effect of that

13  letter and its filing is the maximum penalty is now life

14  imprisonment.

15         THE COURT:  I understand.  Okay.

16         Thank you for that, Mr. Cullen.  I appreciate that.

17         It is my understanding that we're here to conduct a

18  Rule 11 guilty plea hearing in this case.  It is expected

19  that the defendant will plead guilty to certain charges in

20  the indictment pursuant to a written plea agreement in this

21  case.  I have reviewed the indictment, the plea agreement,

22  the statement of the offense -- at least the draft one that I

23  had seen prior to today's hearing.

24         Mr. Fields, before I can call upon you to plead, I

25  must be satisfied that you possess a sufficient understanding

 1    of your situation so as to make a knowing, voluntary,

 2    intelligent, and informed plea.  In fact, the purpose of this

 3    hearing is to make sure that you understand what you're

 4    charged with, what the maximum penalties are, what your

 5    rights are, and that you knowingly and voluntarily enter a

 6    plea of your choice.  Now -- so, therefore, I'll need to make

 7    some findings in terms of whether you're competent to enter a

 8    plea and whether or not you understand the charges and the

 9    penalties against you.  So I'm going to need to ask you a few

10    questions and I am going to require you to answer them under

11    oath.

12            Now, during this proceeding, if there is some

13    question asked or statement made that you don't understand or

14    that you have a question about, I want you to ask your

15    lawyers about it, and I want you to raise it with me.  Okay?

16            THE DEFENDANT:  Yes, sir.

17            THE COURT:  Secondly, if there's something said that

18    you don't agree with, that is just not correct, I want you to

19    tell your lawyers about it and I want you to tell me about

20    it.  Okay?

21            THE DEFENDANT:  Yes, sir.

22            THE COURT:  Now, if you don't speak up, I'm going to

23    assume that you understand what is being said and that you

24    agree with it.  Are we clear on that?

25            THE DEFENDANT:  Yes, sir.

1          THE COURT:  Now, let's go ahead and ask the clerk to

2     administer the oath to the defendant, please.

3          (Defendant sworn.)

4          Let me ask the court reporter:  Where is it best for

5     you to have Mr. Fields?  Do you want him at the podium or is

6     he fine at counsel table?

7          COURT REPORTER:  I believe he's fine there, Your

8     Honor; wherever you'd like him.

9          THE COURT:  What's counsel comfortable with?

10          MR. HEBLICH:  We're comfortable at the table.

11          THE COURT:  That's fine.  We'll do that.

12          Mr. Fields, you may remain standing.  Let me ask you

13     a few questions.

14          Now that you've been sworn, do you understand you

15     must answer any questions posed to you truthfully?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  And that if you answer any questions

18     falsely, your answers may later be used against you in

19     another prosecution for committing perjury or making a false

20     statement.

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  I want to ask you some questions directed

23     to the issue of your competency.  The reason I ask these

24     questions is because, obviously, this hearing is important to

25     you, and I want to make sure that you're clearheaded, alert,

1    and fully understand what's going on.  Okay?

2         THE DEFENDANT:  Yes, sir.

3         THE COURT:  Tell me what your name is.

4         THE DEFENDANT:  James Alex Fields, Jr.

5         THE COURT:  Mr. Fields, how old are you?

6         THE DEFENDANT:  21.

7         THE COURT:  21.

8         When did you turn 21?

9         THE DEFENDANT:  April 26th.

10        THE COURT:  April 26th of 2018?

11        THE DEFENDANT:  Yes, sir.

12        THE COURT:  So in about a month, you'll turn 22?

13        THE DEFENDANT:  Yes, sir.

14        THE COURT:  Where are you from?

15        THE DEFENDANT:  Kentucky.

16        THE COURT:  Kentucky.  Where were you born?  What

17   state?

18        THE DEFENDANT:  Kentucky.

19        THE COURT:  You were born in Kentucky.

20        THE DEFENDANT:  Yes, sir.

21        THE COURT:  So you are a United States citizen.

22        THE DEFENDANT:  Yes, sir.

23        THE COURT:  How far did you get in school?

24        THE DEFENDANT:  I'm a high school graduate.

25        THE COURT:  When did you graduate from high school?

1          THE DEFENDANT:  2015.

2          THE COURT:  Have you taken any college courses or

3    training?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  Now, obviously, you speak English?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Can you read and write in English?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Do you have any condition that I need to

10   be aware of, a medical condition or some other condition such

11   as a hearing problem or something like that, that would make

12   it difficult for you to understand the words that we're

13   speaking here in open court?

14         THE DEFENDANT:  No, sir.

15         THE COURT:  Have you ever been treated for any

16   emotional or mental problem --

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  -- that might -- okay.  Tell me what

19   you've been treated for.

20         THE DEFENDANT:  Bipolar, depression, anxiety, ADHD,

21   schizo-personality disorder, explosive onset disorder.

22         THE COURT:  Okay.  I got bipolar, depression,

23   anxiety, ADHD, schizo-anxiety disorder and the explosive

24   onset disorder.  Did I get most of them?

25         THE DEFENDANT:  Yes, sir.

```
1              THE COURT:  Okay.  Are you currently being treated

2     for those now?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  When did you first start being treated

5     for any of these conditions?

6              THE DEFENDANT:  As a young child.

7              THE COURT:  As a young child.  Okay.

8              Have you been taking medications for these conditions

9     for some time?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  Have you -- I wonder if you could, if you

12    don't mind, Mr. Fields, give me a sense for -- have you

13    been -- how long have you been treated for these various

14    conditions and what the nature of the treatment has been?

15             THE DEFENDANT:  I've been treated since I was about

16    six years old, and I've received therapy and medication for

17    my illnesses.

18             THE COURT:  Okay.  Are you taking medication now?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  So you're getting some while you're in

21    custody?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  What are you taking?

24             THE DEFENDANT:  Risperdal, Zoloft, and BusPar.

25             THE COURT:  Are you currently on those meds?
```

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  Okay.  With those meds -- do those meds

3    help you?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  How are you feeling here today?

6           THE DEFENDANT:  I'm feeling normal, sir.

7           THE COURT:  Okay.  Obviously, we're here in court.

8    It's not a normal setting for anyone.  Do you have any

9    trouble here today understanding what's going on,

10   understanding why you're here?

11          THE DEFENDANT:  No, sir.

12          THE COURT:  Do you understand that you're here

13   charged with a federal hate crime and that you have entered

14   into a plea agreement and that you are pleading guilty to

15   Counts 1 through 29 of the indictment in this case?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Okay.  Now, have you been taking those

18   three drugs -- let's see, I think it was Respirdal, Zoloft,

19   and BuSpar -- for some time?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  For a number of years?

22          THE DEFENDANT:  No, sir.

23          I've taken Respirdal since I was about six years old,

24   but the other ones are new, and the other ones I was on

25   before, I can't take in jail.

```
 1              THE COURT:  So the Zoloft and BuSpar are since you've

 2    been in custody?

 3              THE DEFENDANT:  Yes, sir.

 4              THE COURT:  Do you feel like they help you with your

 5    state of mind?

 6              THE DEFENDANT:  Yes, sir.

 7              THE COURT:  Help you with your clarity of thinking?

 8              THE DEFENDANT:  Yes, sir.

 9              THE COURT:  Again, if there's something here you

10    don't understand, something here you need to have repeated or

11    rephrased, just let me know.  Okay?

12              THE DEFENDANT:  Yes, sir.

13              THE COURT:  We've talked about some of these problems

14    that you've had, and you've had many of these mental health

15    problems for a long time?

16              THE DEFENDANT:  Yes, sir.

17              THE COURT:  I don't know that because I don't know

18    any of your mental health history, but I would certainly get

19    that information when the presentence report is prepared in

20    this case.  That's part of what the probation officers do.

21              Do you understand that?

22              THE DEFENDANT:  Yes, sir.

23              THE COURT:  Have you talked with your lawyers about

24    that?

25              THE DEFENDANT:  Yes, sir.
```

```
1            THE COURT:  Okay.  Now, have you been treated for

2   addiction, either to alcohol or any sort of narcotic drug?

3            THE DEFENDANT:  No, sir.

4            THE COURT:  Now, other than the Respirdal, the Zoloft

5   and the BuSpar, have you taken any other medications in the

6   past few days?

7            THE DEFENDANT:  No, sir.

8            THE COURT:  Now, have you taken any other drugs,

9   intoxicants, alcohol, anything else that might affect your

10  ability to understand what's going on here in the past few

11  days?

12           THE DEFENDANT:  No, sir.

13           THE COURT:  Counsel, do you have an opinion with

14  regard to Mr. Fields' competency?

15           MS. LORISH:  Yes, Your Honor.  I think he's competent

16  to enter a guilty plea today.

17           THE COURT:  You've been working with Mr. Fields for

18  how long, Ms. Lorish?

19           MS. LORISH:  Almost -- over a year now.

20           THE COURT:  Over a year now.  Okay.  All right.

21           Do we have a copy of the indictment there?

22           MS. LORISH:  Yes, Your Honor.

23           THE COURT:  Mr. Fields, do you have a copy of the

24  indictment there?

25           THE DEFENDANT:  Yes, sir.
```

1          THE COURT:  Have you received a copy of it?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Have you read it?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Okay.  Have you -- let me ask Ms. Lorish:

6    What have you done to acquaint your client with the charges

7    in this indictment, in general terms?

8          MS. LORISH:  In general, Your Honor, Mr. Heblich and

9    I have met with Mr. Fields on numerous occasions over the

10   last year to review the potential charges before they were

11   brought, and then also the indictment after it was issued,

12   and have met with him numerous times regarding the contents

13   of the plea agreement today.

14         THE COURT:  Okay.  And have you gone over with Mr.

15   Fields the charges, what the elements of the offense are; in

16   other words, what the government would have to prove, the

17   possible penalties, and the pleas available to him?

18         MS. LORISH:  I have, Your Honor.

19         THE COURT:  Now, based on your discussions with your

20   client about the charges in the indictment, are you in a

21   position to waive its formal reading or would you like it to

22   be read into the record?

23         MS. LORISH:  We'll waive the formal reading, Your

24   Honor.

25         THE COURT:  Mr. Fields, a few questions for you.

1          Have you read the indictment?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Have you had a chance to fully discuss

4    the charges in the indictment with your attorney?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  You're charged in 30 counts in this

7    indictment.  Do you understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Do you understand the charges in the

10   indictment?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Do you understand that these charges are

13   felonies under federal law?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  And a felony, of course, means a crime

16   that is punishable by a period of incarceration of greater

17   than one year.

18         Do you understand that?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Now, by pleading guilty to Counts 1

21   through 29 of this indictment, that means that you are

22   agreeing that you did the things charged in Counts 1 through

23   29 of the indictment.

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Do you understand that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Now, all right.

3          I'm going to ask the government in a little bit to go

4    over the offenses, the elements of the offense, and the

5    maximum possible penalties.

6          Okay, Mr. Kavanaugh?

7          MR. KAVANAUGH:  Yes, Your Honor.

8          THE COURT:  Let's take a look -- why don't you go

9    ahead and do that now?  Let's go over the charges in Counts 1

10   through 29.  Let's go over the elements of the offense, and

11   let's go over the maximum possible penalties.  I may go over

12   it a little bit as well, but let's hear from you, Mr.

13   Kavanaugh.

14         MR. KAVANAUGH:  Thank you, Your Honor.  Chris

15   Kavanaugh on behalf of the United States.

16         The charges in the indictment, Counts 1 through 29,

17   are as follows:  Count 1 is a hate crime resulting in death,

18   in violation of 18 U.S.C. 249 subsection (A)(1).  The maximum

19   possible penalty for that is life imprisonment, a $250,000

20   fine, and up to five years of supervised release.

21         Counts 2 through 29 are also hate crimes under the

22   same statutory provision of 18 U.S.C. 249(A)(1).  However,

23   they are involving an attempt to kill.  The maximum penalty

24   for those is life imprisonment, a $250,000 fine, and

25   five years of supervised release.

```
 1          THE COURT:  And as I understand it, Counts 2 through
 2   29 each deal with a separate victim.
 3          MR. KAVANAUGH:  That's exactly right, Your Honor, 28
 4   additional victims, in addition to the victim named in Count
 5   1.
 6          THE COURT:  Right.
 7          MR. KAVANAUGH:  As to the elements of the offense,
 8   Your Honor, there are two elements of the offense that I'd
 9   like to go over.
10          The first is that -- number one, is that the
11   defendant willfully caused a bodily injured, or that he
12   attempted to do so through the use of a dangerous weapon; and
13   two, that the defendant did so because of the person's race,
14   color -- I'm sorry -- because of many persons' race, color,
15   religion or national origin.
16          For Counts 1, and then Counts 2 through 29, there's
17   an additional element.  For Count 1, the government would
18   have to show that it resulted in death.  In this case, that
19   would be Heather Heyer.  And for Counts 2 through 29, the
20   government would have to show that the offense included an
21   attempt to kill, and those are for the victims that are
22   listed in Counts 2 through 29 of the indictment.
23          THE COURT:  Right.
24          And with regard to the intent element, it is because
25   of actual or perceived race, color, religion, or national
```

1   origin.

2           MR. KAVANAUGH:  Exactly, Your Honor.

3           THE COURT:  Let's go over the penalties, if you

4   would, sir.

5           MR. KAVANAUGH:  Your Honor, for penalties, Counts 1

6   through 29, all of those have a maximum penalty of life, face

7   a fine of up to $250,000, and up to five years of supervised

8   release.

9           THE COURT:  Okay.  There's also a mandatory special

10  assessment of a hundred dollars per count?

11          MR. KAVANAUGH:  Yes, Your Honor.

12          THE COURT:  Okay.  All right.  Thank you.

13          Now, let me ask you, Mr. Fields:  Do you have any

14  questions at all about the charges set forth in Counts 1

15  through 29 of the indictment?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  Do you have any questions about the

18  elements of the offense; in other words, what the government

19  would have to prove to get a conviction for Counts 1 through

20  29 of the indictment?

21          THE DEFENDANT:  No, sir.

22          THE COURT:  Do you have any questions about the

23  penalties involved?

24          THE DEFENDANT:  No, sir.

25          THE COURT:  Do you understand that for each of these

1   counts, the maximum possible penalty is a period of

2   incarceration of up to life in prison?  Do you understand

3   that?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  And that there's a fine of up to $250,000

6   per count, and a period of supervised release of up to five

7   years per count.

8          Do you understand that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  And a mandatory special assessment --

11   it's like court costs -- of a hundred dollars per count.

12          Do you understand that?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Now, I understand a plea of guilty is

15   reflected in a written plea agreement.  I have a few

16   questions for you about that, Mr. Fields.

17          Do we have a copy of the signed, written plea

18   agreement in front of you?

19          MS. LORISH:  We do, Your Honor.

20          THE COURT:  Mr. Fields, did you read that plea

21   agreement?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Now, it's 14 pages.  It's single-spaced.

24   There's a lot of stuff in there; okay?  We're going to go

25   over it, but I want to make sure.

1          Did you read every page?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Okay.  Did you initial every page,

4   indicating that you read it?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Okay.  Did you go over every page with

7   your lawyer?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Your lawyers.

10          Did you have a chance to ask them questions about the

11   various provisions of the plea agreement?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Now, did you sign it at the end?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Indicating that you agree to the terms of

16   this plea agreement.

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Okay.  And do you, in fact, agree to the

19   terms of this plea agreement?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Okay.  What I'd like to do now is ask the

22   Assistant United States Attorney to go over the essential

23   terms of the plea agreement here in open court.  I do this in

24   every case because I want the defendant to hear out of the

25   mouth of the government what they say this agreement means.

```
1    So if something doesn't sound right to you, it would be time

2    to let your lawyers know and let me know.  Okay?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Mr. Kavanaugh.

5              MR. KAVANAUGH:  Yes, Your Honor.

6              As the Court noted, the original document is the

7    14-page document that the defendant has signed, but I will

8    summarize the plea agreement as follows, as far as its

9    material provisions.

10             THE COURT:  Yeah, I do not need you to read it, all

11   14 pages, but the essential terms of the plea agreement would

12   be helpful.

13             MR. KAVANAUGH:  Thank you.

14             First is that the defendant admits to -- agrees to

15   admit guilt and enter pleas of guilty to Counts 1 through 29

16   of the indictment, all of which charge federal hate crimes,

17   in violation of 18 U.S.C. 249(A)(1).

18             The defendant agrees that the first degree murder

19   guideline and the United States Sentencing Guidelines of

20   2A1.1 applies.  He also agrees that the enhancement for the

21   hate crime motivation under Section 3A1.1 applies, also under

22   the 2018 version of the United States Sentencing Guidelines.

23             The parties agree that there may be other guideline

24   provisions that are appropriate that apply --

25             THE COURT:  43 is the top end of the guidelines,
```

1    according to this.

2         MR. KAVANAUGH:  Yes, Your Honor.

3         THE COURT:  My book doesn't have the 43 plus 3.

4         MR. KAVANAUGH:  That's correct, Your Honor.

5         THE COURT:  Go ahead.

6         MR. KAVANAUGH:  Your Honor, the parties agree that

7    after applying all of the appropriate provisions of the

8    United States Sentencing Guidelines that the applicable

9    guideline range will be a term of life imprisonment.

10        THE COURT:  Okay.  Of course, he can get some

11   reduction off the 43 plus 3 for acceptance of responsibility.

12        MR. KAVANAUGH:  Yes, he could, Your Honor, to bring

13   it back down to 43, which also leads to an applicable

14   guideline range of life.

15        THE COURT:  Life.  Okay.

16        MR. KAVANAUGH:  And for Your Honor's benefit, we

17   actually anticipate that the guideline range -- that base

18   offense level will be even higher because of the Counts 2

19   through 29.  It will be 43 on Count 1 alone so we would

20   actually anticipate that with Counts 2 through 29 --

21        THE COURT:  The parties, on page 4, third

22   paragraph -- it says, "The parties stipulate and agree that

23   after applying all appropriate provisions of the 2018

24   guidelines manual, the applicable guideline range in my case

25   is a term of life imprisonment."

1          MR. KAVANAUGH:  Yes; that's exactly right.

2          THE COURT:  All right.

3          MR. KAVANAUGH:  The defendant agrees to waive his

4    right to appeal or to collaterally attack his sentence or

5    conviction, as outlined in subsection (c)(1), except as to

6    those issues which cannot be waived by law.

7          Your Honor, we don't believe that the interstate

8    agreement on detainers applies, but to the extent it does

9    apply, the defendant agrees that he waives his rights under

10   the Interstate Act of Detainers -- agreement on detainers,

11   and agrees that his case should be determined by the

12   provisions of the Speedy Trial Act, 3161.

13         Your Honor, these are the material provisions that

14   the defendant agrees to, and if he complies with those

15   material provisions of the agreement, the government agrees

16   to do the following:

17         First is that, at sentencing, the government will

18   agree to dismiss Count 30.  That was the provision that Mr.

19   Cullen was referring to earlier, and that was the provision

20   that originally carried with it the potential penalty of the

21   death penalty.

22         Second is that the government agrees that it will not

23   charge him with any additional criminal offenses in violation

24   of federal law committed within the Western District of

25   Virginia or Northern District of Virginia prior to the

1   execution -- sorry -- Northern District of Ohio -- I

2   apologize -- prior to the execution of the agreement and

3   about which the government was made aware prior to the

4   execution of the agreement.

5           Third, and finally, is that prior to sentencing, the

6   United States will request and seek a transfer of primary

7   jurisdiction from the Commonwealth of Virginia to the federal

8   government.

9           That is what the government will do if the defendant

10  complies with the provisions of the agreement.

11          THE COURT:  What is the upshot of the transfer of the

12  primary jurisdiction from the Commonwealth of Virginia to the

13  federal government?

14          MR. KAVANAUGH:  Your Honor, that will relate to his

15  serving his sentence in a Bureau of Prisons facility.

16          THE COURT:  A federal Bureau of Prisons facility.

17          MR. KAVANAUGH:  Yes, Your Honor.

18          THE COURT:  That's what I thought.  Thank you for

19  that, Mr. Kavanaugh.

20          Okay.  Now, Mr. Fields, do you have -- first, let me

21  ask your lawyer:  Is that summary consistent with your

22  understanding of the essential terms of the plea agreement?

23          MS. LORISH:  It is, Your Honor.

24          THE COURT:  And, Mr. Fields, is that summary

25  consistent with your understanding as well?

```
1              THE DEFENDANT:  Yes, sir.

2              THE COURT:  Mr. Fields, do you understand the terms

3      of the plea agreement?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Do you have any questions at all you want

6      to ask me about the plea agreement?

7              THE DEFENDANT:  No, sir.

8              THE COURT:  Do you agree to the terms set forth in

9      the plea agreement?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  Do you want the Court to accept the plea

12     agreement in this case?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Has anyone attempted to force you,

15     pressure you, threaten you, coerce you, make you plead guilty

16     to the charges in this case?

17             THE DEFENDANT:  No, sir.

18             THE COURT:  Are you pleading guilty of your own free

19     will?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  Has anyone made you any promises or

22     assurances separate from or different than those set forth in

23     this plea agreement?

24             THE DEFENDANT:  No, sir.

25             THE COURT:  Does the plea agreement represent in its
```

1   entirely any understanding you have with the United States?

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  In other words, is this the whole

4   agreement with the United States set forth in this plea

5   agreement?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  Okay.

8           Now, this is a felony offense under federal law, and

9   in addition to the penalties that Mr. Kavanaugh has gone over

10  for Counts 1 through 29 -- and those are, again, a maximum

11  term of imprisonment of life for each count, a period of

12  supervised release of up to five years, a fine of up to

13  $250,000, and a mandatory special assessment of a hundred

14  dollars.

15          In addition to that, along with this comes a loss of

16  civil rights.  Someone who's convicted of a felony under

17  federal law loses the right to vote, serve on a jury, possess

18  any kind of firearm, hold public office.

19          Do you understand that?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Okay.  Now, we have gone over the charge

22  and the elements.

23          Again, any questions you have about the charges in

24  Counts 1 through 29 or what the government would have to

25  prove?

1          THE DEFENDANT:  No, sir.

2          THE COURT:  We have gone over the penalties in this

3     case, and Mr. Kavanaugh said it, and I've said it a couple

4     times.  Do you have any questions about those penalties?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  And I'm sure you have talked with your

7     lawyers about those penalties at some length.

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Now, do you understand the penalties that

10    we've listed:  Period of incarceration of up to life, fine of

11    up to $250,000, mandatory special assessment of $100 per

12    count, and a period of supervised release up to five years.

13    Those are the consequences of your plea of guilty to these

14    counts in this case.

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Now, let me explain to you very

17    briefly -- and I do this in every case -- how the Court goes

18    about reaching a sentence in this case.  Okay?

19         The first thing I will do if I accept the plea and

20    plea agreement is I will refer the matter to probation for

21    the creation of a presentence report.  A presentence report

22    will contain a lot of information about you and about this

23    crime and about the victims of this crime.  One of the things

24    the presentence report will do is it will calculate for me a

25    range under the advisory sentencing guidelines of where your

1    case should fall.  The way the federal advisory sentencing

2    guidelines work is that there is a numerical value associated

3    with each federal crime, and that is put on one axis.  Then

4    your criminal history is put on the other axis on a chart in

5    the guidelines manual, and the appropriate guideline range is

6    meted out.

7            Now, you have agreed and stipulated with the

8    government that your appropriate guideline range associated

9    with first degree murder under guideline 2A1.1 is a 43.

10   Okay?  That is as far as the guidelines go.  That is the

11   bottom end of the guidelines for which every criminal history

12   category associated with calls for a guideline sentence of

13   life imprisonment.

14           Do you understand that?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  The government is also calling for an

17   enhancement, and it seems to me you stipulated and agreed to

18   this enhancement as well, that under 3A1.1(a), there was a

19   hate crime motivation, so that would increase this by three

20   points more.

21           Now, the guidelines can be reduced by certain

22   factors, including for someone who pleads guilty and accepts

23   responsibility for his offense.  So this plea agreement says

24   that you all agree that the appropriate guideline range in

25   this case is a term of life imprisonment.

1           Do you understand that?

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  Do you agree to that?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  Okay.  Now, let me tell you something

6   about that, and that is this.  Under current law, these

7   guidelines are not binding on the court.  These guidelines

8   are advisory.  Okay?  It's a place for the Court to start in

9   imposing a sentence, okay?  So the fact that you and the

10  government have stipulated to a life imprisonment sentence

11  does not mean that the Court is required to impose a life

12  imprisonment sentence.  The Court may, if the Court -- the

13  Court can't go any higher than a life imprisonment sentence

14  because that's the statutory maximum.  But the Court is not

15  bound by this, this guideline stipulation, if the Court

16  believes under all the facts and circumstances of the case

17  that a different sentence is required.  In other words,

18  simply because you and the government have agreed to a

19  particular sentence in this plea agreement does not mean that

20  it's binding on the Court.

21          MS. LORISH:  Your Honor, I just want to be clear.

22  The parties haven't agreed to a particular sentence.

23          THE COURT:  No, you agreed to a guideline range.

24          MS. LORISH:  Thank you.

25          THE COURT:  If I misstated that, I'm sorry.  What you

1    say is you agree to a guideline range.

2            MS. LORISH:  That's correct, Your Honor.

3            THE COURT:  Simply because you have agreed to a

4    guideline range of life imprisonment does not mean that

5    that's where I have to find the guidelines -- okay -- or

6    where the sentence ultimately will be.

7            Do you understand that?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  At the end of the day, the sentence is up

10   to the Court.  Okay?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  Let me tell you how that works.

13           The guidelines under federal law are a place to

14   start.  So the Court will come up with this guideline range.

15   You all have agreed on a 43 and a term of life imprisonment,

16   and that might turn out to be right.  If that range is right

17   and consistent with the law and the facts, then I'll go along

18   with it.  Okay?  But I get to decide whether or not I think

19   it's right or not.

20           Next, after the guidelines are calculated, I have to

21   turn to a statute.  It's in this book here, 18 United States

22   Code Section 3553(a), and I'm sure you've talked to your

23   lawyers about it.  It is the statute that sets out the

24   factors that a federal judge must consider in imposing a

25   sentence.  Okay?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  The first factor is the nature and

3   circumstances of the offense.  What was the crime and what

4   was Mr. Fields' role in it?  That is a factor that the Court

5   considers.

6          The next factor is the history and characteristics of

7   the defendant, and that is where your story about how you've

8   lived your life, and the issues you've had with these mental

9   health conditions will come into play -- in that factor --

10  and any other facts and circumstances about your family,

11  about your health situation, your education, and all of that.

12  So those will also be commented on in the presentence report.

13         The other factors are more general, and they consist

14  of the need for the sentence imposed to reflect the

15  seriousness of the offense, to provide just punishment, to

16  afford adequate deterrence, to protect the public.  The Court

17  must consider the guidelines and the kinds of sentences

18  available, the need to avoid unwarranted sentence

19  disparities, among those factors.

20         So in other words, right now, I don't have a

21  presentence report.  The guidelines haven't been calculated,

22  so the Court, right now, is not in a position to impose

23  sentence.  That will be down the road.  Okay?  But if you

24  plead guilty here today and I accept that guilty plea, you

25  will not be able to withdraw that guilty plea regardless of

1    the sentence you get.

2         Do you understand that?

3         THE DEFENDANT:  Yes, sir.

4         THE COURT:  Okay.  So simply because -- if the

5    sentence turns out to be higher than you and your lawyer may

6    have estimated or talked about, then you are not going to be

7    able to withdraw your guilty plea so long as I stay within

8    the statutory maximum, and that is life imprisonment.

9         Do you understand?

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  Okay.

12        Now, in other words, you plead guilty here today, I

13   accept it, the only thing left is for sentencing, and you're

14   not going to be allowed to withdraw your guilty plea.

15        Do you understand?

16        THE DEFENDANT:  Yes, sir.

17        THE COURT:  Okay.

18        Now, there is no parole under the federal system so

19   if you receive a sentence, for example, of life imprisonment,

20   that is life imprisonment without parole.

21        Do you understand that?

22        THE DEFENDANT:  Yes, sir.

23        THE COURT:  In other words, there's no board you can

24   apply to to get out early.  If your sentence is a period of

25   years or for life, you will serve that period of years or

```
1   life, and there is no opportunity to get out early.

2         Do you understand that?

3         THE DEFENDANT:  Yes, sir.

4         THE COURT:  Now, I mentioned supervised release.

5   Supervised release is a period of time after any sentence --

6   after completion of any sentence in this case.  Now,

7   obviously, if you were sentenced to life imprisonment, which

8   is the statutory maximum here and for which the parties have

9   stipulated is the applicable guideline range, then supervised

10  release would not be relevant.  But if you were sentenced to

11  a period of years, after you got out of prison, you would

12  still be subject to a period of supervision under which you

13  would have to be of good behavior, you would have to follow

14  the instructions of probation, not commit any crimes, not

15  have anything to do with guns or drugs and, again, follow the

16  instructions of probation.  That would come after the service

17  of any prison sentence.  That's what supervised release

18  means.  For these crimes, it's a period of supervised release

19  of up to five years.

20        Do you understand that?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  Now, any questions at all about the

23  penalties in this case, what the Court's going to do in terms

24  of calculating the penalty?  Any questions about any of that?

25        THE DEFENDANT:  No, sir.
```

1        THE COURT:  Now, one thing I didn't mention that I

2   always mention, and that is this.  You'll get a copy of the

3   presentence report before the sentencing hearing in this

4   case.  You'll get a chance to review it with your lawyers.

5   So will the government.  And you'll get a chance to see if

6   there's any things in there that are not correct, and you can

7   make objections or corrections to it.  If you and the

8   government and probation can't work those out ahead of time,

9   I will resolve any objections at sentencing in this case.

10       Likewise, if there is -- if probation comes up with a

11   different guideline range and you think they've done

12   something wrong with the guidelines, then you can object to

13   it and so can the government and we can talk about that and I

14   will resolve all of that at sentencing.

15       Do you understand that?

16       THE DEFENDANT:  Yes, sir.

17       THE COURT:  The other thing I will ask, and I ask

18   this in every case, and that is I ask your lawyers and I ask

19   the government to provide me with a written sentencing

20   memorandum a week before trial -- a week before -- excuse

21   me -- the sentencing in this case.  I very often get

22   information in there that is not in the presentence report.

23   Obviously, the lawyers here know a lot more about this case

24   than the Court does, and very often, you have insights that

25   are helpful to the Court in sentencing that you can provide

1   in sentencing memoranda.

2         I will also hear, obviously, from any victims, at

3   sentencing.  They have a right to be heard, and I will hear

4   from victims at sentencing.

5         Likewise, Mr. Fields, if you want to have anyone

6   write me letters -- if anyone wants to write me a letter

7   about this case -- friends, family members, anything like

8   that -- I always read what gets sent in before sentencing,

9   and that's a very common -- a very common occurrence.  Okay?

10        Any other questions about the penalties in this case?

11        THE DEFENDANT:  No, sir.

12        THE COURT:  Let's talk about what you're giving up by

13  pleading guilty in this case.  You're giving up three things.

14  First, you're giving up your right to have 12 folks sit in

15  that jury box right there and decide whether or not the

16  government can prove its case against you beyond a reasonable

17  doubt.

18        You, as the defendant, have a right to remain silent

19  and not have that silence used against you.

20        You have a right to plead not guilty and persist in

21  that plea.

22        You would have the right at a jury trial to have the

23  assistance of counsel.

24        You would have the right to see and confront by

25  cross-examination all of the government's witnesses in this

1      case.

2              You would have the right to testify if you wanted to,

3      and you would have the right to bring persons and documents

4      and things here into court to assist in your defense by means

5      of the use of the subpoena power of the court.

6              At that trial, the government would have to get -- in

7      order to find you guilty, it would have to be by a unanimous

8      verdict, and a verdict that is beyond a reasonable doubt.

9      Again, you have no burden of proof and do not have to prove

10     anything.  But by pleading guilty here today, you waive your

11     right to trial by jury and there will be no trial.

12             Do you understand that?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  And you give up all of those

15     constitutional rights associated with trial except for the

16     assistance of counsel.  You get to keep your counsel.

17             Do you understand that?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  And all those other rights, you waive

20     them.

21             Do you understand?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:   In other words, you give them up.

24             Do you understand?

25             THE DEFENDANT:  Yes, sir.

1        THE COURT:  The second thing you give up in this plea

2   agreement is your right to appeal.  That's set forth on page

3   7 of the plea agreement.  It says, "I expressly waive my

4   right to appeal my sentence."  And you give up your right to

5   direct appeal.  In fact, you instruct your lawyer not to file

6   a notice of appeal in this case.

7        Now, it says, "I'm not waiving my right to appeal or

8   to have my attorney file a notice of appeal as to any issue

9   which cannot be waived."  Well, what does that mean?  If I

10  were to sentence you beyond what the law allows, you could

11  appeal that.  Okay?  But the law in this case sets the

12  maximum penalty at life imprisonment.  So that's not going to

13  happen.  Okay?  And so -- or if I were to sentence you based

14  on some constitutionally impermissible factor such as your

15  age or your sex or your race or national origin or something

16  like that -- well, maybe you could appeal that.  But I'm not

17  going to do that either.  Okay?  So you are essentially

18  giving up in this plea agreement your right to appeal.

19  Specifically, you say, "I agree and understand that if I file

20  any court document except for an appeal based on an issue

21  that cannot be waived by law or a collateral attack based on

22  ineffective assistance of counsel, seeking to disturb in any

23  way any order imposed in my case, such action shall

24  constitute a failure to comply with a provision of this

25  agreement.  I understand that my knowing and voluntary waiver

1  of the right to appeal or collaterally attack my conviction

2  and sentence includes a waiver of the right to raise on

3  appeal or on collateral review any argument that;

4      One, the statute to which I am pleading guilty is

5  unconstitutional;

6      And, two, the conduct to which I am admitting through

7  my guilty plea does not fall within the scope of the

8  statute."

9      That is a very broad waiver of the right to appeal.

10     Do you understand how broad it is?

11     THE DEFENDANT:  Yes, sir.

12     THE COURT:  Do you understand you are essentially

13  giving up your right to appeal this case?

14     THE DEFENDANT:  Yes, sir.

15     THE COURT:  Next.  The third thing you give up is

16  your right to collaterally attack the judgment.  Well, what

17  does that mean?  That means you give up your right to file a

18  petition for a writ of habeas corpus, a separate civil suit

19  filed by someone who's in custody to say, Let me out; there

20  was something wrong with my proceeding.  You give up that

21  right except for a claim that in some respect your lawyers

22  have been constitutionally ineffective.

23     So you give up your right to jury trial in its

24  entirety, and except in narrow respects, you give up your

25  right to an appeal or to file a habeas corpus petition.

1          Do you understand those rights you're giving up by

2   pleading guilty?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Understanding those rights, do you still

5   want to plead guilty in this case?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Now, are you fully satisfied with the

8   advice and representation provided to you in your case by Mr.

9   Heblich and Ms. Lorish, your counsel?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  Now, we've gone over a lot of things.

12  We've gone over the charges.  We've gone over the elements of

13  the offense.  We've gone over the penalties.  We've gone over

14  the terms of the plea agreement.  We've gone over the rights

15  that you're giving up, and we've gone over all of these

16  matters.

17         Do you have any questions at all you want to ask me

18  before we go further?

19         THE DEFENDANT:  No, sir.

20         THE COURT:  Okay.

21         Let me ask the United States to present the facts it

22  would be prepared to prove were this case to go to trial.

23         I understand there's a written statement of offense

24  in this case that the parties have agreed upon.

25         MR. CULLIN:  That's correct, Your Honor, and with the

1    Court's permission, I would just read that into the record

2    and just enter it as an exhibit.

3          THE COURT:  Please.

4          Mr. Fields, Mr. Cullen is going to read this written

5    statement of offense that I understand you've gone over with

6    your lawyer.  I'm going to ask you some questions about it,

7    but principally, I'll ask you:  Do you agree if this case

8    went to trial, the government could prove the facts set forth

9    in this statement of offense?  I'll ask you that at the end.

10   So be thinking about that.

11         Go ahead, Mr. Cullen.

12         MR. CULLIN:  The offenses described below occurred

13   within the Western District of Virginia as well as other

14   districts.  This statement of offense briefly summarizes the

15   facts and circumstances surrounding the defendant's criminal

16   conduct.  It does not contain all of the information obtained

17   during this investigation and applicable to an accurate

18   presentence report and sentencing guidelines calculation.

19         This statement of facts is not protected by proffer

20   agreement or any other agreement except in the event the

21   attached plea agreement is not approved as contemplated by

22   paragraph E section 1.  This statement of facts shall be

23   wholly admissible at trial in the event this plea is later

24   withdrawn, notwithstanding any rules or statutes to the

25   contrary, including, but not limited to Federal Rules of

1    Evidence 408 and 410 and Federal Rule of Criminal Procedure

2    11.

3         Defendant James Alex Fields, Jr., acknowledges and

4    agrees that in proving the elements of the crimes to which he

5    is pleading guilty, the United States can establish the

6    following facts beyond a reasonable doubt, and that these

7    facts constitute an adequate basis for his pleas of guilty.

8         Prior to August 12, 2017, Defendant Fields obtained

9    multiple social media accounts, which he used to express his

10   beliefs regarding race, national origin, religion, and other

11   topics.  On these accounts, Fields expressed and promoted his

12   view that white people are superior to other races and

13   peoples; expressed support of the social and racial policies

14   of Adolf Hitler and Nazi Germany, including the Holocaust;

15   and espoused violence against African-Americans, Jewish

16   people, and members of other racial, ethnic, and religious

17   groups he perceived to be nonwhite.  Fields also expressed

18   these views directly in interactions with individuals known

19   to him.

20        In or around the spring and summer of 2017, an event

21   referred to as the Unite the Right rally was organized and

22   scheduled to occur on August 12, 2017, at Emancipation Park,

23   in Charlottesville, Virginia, which is within the Western

24   District of Virginia.  This rally was widely promoted on

25   social media and internet cites associated with white

1    supremacist individuals and groups, and was scheduled to

2    feature a lineup of well known white supremacist speakers.

3          On the afternoon of August 11, 2017, Defendant Fields

4    departed Maumee, Ohio, driving his grey Dodge Challenger

5    bearing Ohio license plate number GVF-111, and arrived in

6    Charlottesville in the early morning of August 12, 2017.

7          On the morning of August 12, 2017, Defendant Fields

8    arrived in and around the immediate vicinity of Emancipation

9    Park in Charlottesville to attend the Unite the Right rally.

10   Multiple groups and individuals espousing white supremacist

11   and other anti-Semitic and racist views also attended the

12   rally.  That morning, these rally participants, including

13   Fields, engaged in chants promoting or expressing white

14   supremacist and other racist and other anti-Semetic views.

15         On August 12, 2017, shortly before the scheduled

16   start of the Unite the Right rally, law enforcement declared

17   an unlawful assembly and required rally participants,

18   including Defendant Fields, to disperse.  Fields later

19   returned to his vehicle and began to drive on the streets of

20   Charlottesville, Virginia.

21         On August 12, 2017, Defendant Fields drove his car

22   onto 4th Street, a narrow downhill, one-way street in

23   downtown Charlottesville.  At or around that same time, a

24   racially and ethnically diverse crowd had gathered at the

25   bottom of the hill at the intersection of 4th and East Water

1    Streets.  Many of the individuals in the crowd were

2    celebrating as they were chanting and carrying signs

3    promoting equality, and protesting against racial and other

4    forms of discrimination.  Fields slowly proceeded in his

5    vehicle down 4th Street towards the crowd and stopped and

6    observed the crowd while idling his vehicle.  With no vehicle

7    behind him, Fields then slowly reversed his vehicle back up

8    4th Street toward the top of the hill near the intersection

9    of 4th and East Market Streets.

10          At or around the same time, the members of the crowd

11   began to walk up 4th Street from Water Street toward Market

12   Street, populating the streets and sidewalks between the

13   buildings on 4th Street.  Having reversed his car to a point

14   at or near the top of the hill in the intersection of 4th and

15   Market Streets, Defendant Fields stopped his vehicle.  Fields

16   then rapidly accelerated forward down 4th Street in his

17   vehicle running through a stop sign and across a raised

18   pedestrian mall and drove directly into the crowd.  Fields's

19   vehicle stopped only when it struck another stopped vehicle

20   near the intersection of 4th and Water Streets.  Fields then

21   rapidly reversed his car and fled the scene.

22          As Fields drove into and through the crowd, Fields

23   struck numerous individuals, killing Heather Heyer, as listed

24   in Count 1 of the indictment, and causing bodily injury, or

25   attempting to cause bodily injury using his vehicle, a

1    dangerous weapon, to the following individuals, as listed in

2    Counts 2 through 29 of the indictment:  Count 2, the victim

3    identified by the initials MB; Count 3, the victim identified

4    by the initials, MM; Count 4, the victim identified by the

5    initials, CC; Count 5, the victim identified by the initials,

6    TB; Count 6, the victim, WB; Count 7, victim NL; Count 8,

7    victim EB; Count 9, victim AM; Count 10, victim NM; Count 11,

8    victim CA; Count 12, victim NR; Count 13, victim MAN; Count

9    14, victim SS; Count 15, victim KA; Count 16, victim CN;

10   Count 17, victim MR; Count 18, victim AH; Count 19, victim

11   KT; Count 20, victim SL; Count 21, victim CY; Count 22,

12   victim LQ; Count 23, victim TW; Count 24, victim MW;

13   Count 25, victim BH, Count 26, victim LS; Count 27, victim

14   MJ; Count 28, victim AJ; and Count 29, victim AR.

15           Finally, Defendant Fields drove into the crowd

16   because of the actual or perceived race, color, religion or

17   national origin of the individuals in the crowd, and his

18   actions in doing so were willful, and included the attempt to

19   kill.

20           Your Honor, a signed copy of the statement of offense

21   will be entered into the record.

22           THE COURT:  Thank you, Mr. Cullen.

23           Let me ask defense counsel:  Is there any dispute

24   about the facts set forth in the statement of offense?

25           MS. LORISH:  No.  We agree that would be the

1       government's evidence, Your Honor.

2              THE COURT:  Mr. Fields, you just heard a summary of

3       the evidence against you.  Do you hear anything in that

4       summary with which you disagree?

5              THE DEFENDANT:  No, sir.

6              THE COURT:  Now, this is a written statement of

7       offense and it bears your initials on each page and your

8       signature on page 3.  Did you have a chance to go over this

9       with your lawyer?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  Did you read it?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Did you sign it?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Do you agree with these facts?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Is there anything in the written

18      statement of facts with which you disagree?

19             THE DEFENDANT:  No, sir.

20             THE COURT:  Now, with regard to Counts 1 through 29

21      of this indictment, are you, in fact, guilty of what is

22      charged in those counts?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  Are you pleading guilty of your own free

25      will?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Counsel, based on your investigation of

3     the facts of this case, your understanding of your client,

4     what took place in connection with the offense, the

5     circumstances of this indictment, your review of the

6     discovery, your understanding of the law, do you believe the

7     plea of guilty pursuant to the written plea agreement in this

8     case is well advised, consistent with the facts and the law,

9     and in your client's best interests?

10         MS. LORISH:  I do, Your Honor.

11         THE COURT:  Okay.

12         As to Counts 1 through 29 inclusive, Mr. Fields, how

13    do you plead?

14         THE DEFENDANT:  Guilty.

15         THE COURT:  And that would mean all 29 counts.  Do

16    you understand that?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Okay.

19         Listen to the clerk while she reads you the written

20    guilty plea form.

21         THE CLERK:  Mr. Fields, it reads:  "In the presence

22    of Lisa Lorish and Fred Heblich, Federal Public Defenders, my

23    counsel, who has fully explained the charges contained in the

24    indictment against me, and having received a copy of the

25    indictment from the United States Attorney before being

1    called upon to plead, I hereby plead guilty to said

2    indictment and Counts 1 through 29 thereof.  I have been

3    advised of the maximum punishment which may be imposed by the

4    Court for these offenses.  My plea of guilty is made

5    knowingly and voluntarily and without threat of any kind or

6    without promises other than those disclosed here in open

7    court."

8              (Said guilty plea form executed.)

9              The form's been executed, sir.

10             THE COURT:  The Court is advised by the clerk that

11   the defendant has executed the guilty plea form.

12             Before I make my findings in this case, are there any

13   things from the government's standpoint that the Court needs

14   to do at this Rule 11 hearing?

15             MR. KAVANAUGH:  No, Your Honor.

16             THE COURT:  Anything from the defendant's standpoint

17   that the Court needs to cover or clarify at this Rule 11

18   hearing?

19             MS. LORISH:  Nothing else, Your Honor.

20             THE COURT:  It is the finding of the Court in the

21   case of United States v. James Alex Fields, Jr., that the

22   defendant is fully competent and capable of entering an

23   informed plea.  He's aware of the nature of the charges and

24   the consequences of his plea, and his plea of guilty is

25   knowing, voluntary and supported by an independent basis in

1    fact as to each of the essential elements of the offense.

2         The Court accepts the guilty plea as to Counts 1

3    through 29, inclusive, of the indictment and finds the

4    defendant, James Alex Fields, Jr., guilty of Counts 1 through

5    29, inclusive, of the indictment.

6         As I indicated, a written presentence report will be

7    prepared by probation, and I direct probation to begin work

8    on such report.

9         Mr. Fields, you'll be asked to give information for

10   that report.  Your lawyers may be present for any such

11   interview.  You will be given an opportunity to review the

12   presentence report, make any necessary corrections or

13   objections.

14        Any victims will be given an opportunity to be heard

15   at sentencing.

16        Again, if anyone -- Mr. Fields, if you want to have

17   anyone write me any letters or provide any additional

18   information about you prior to sentencing, I always read them

19   and, of course, if you want to call any witnesses, I'll be

20   happy to hear from them as well.

21        We're going to set this case down for sentencing on

22   July 3, 2019, 9:00 a.m., in this courtroom.

23        Is there anything further the Court needs to take up

24   at this time?

25        Mr. Kavanaugh?

```
1            MR. KAVANAUGH:  No, Your Honor.

2            THE COURT:  Ms. Lorish?

3            MS. LORISH:  No, Judge.  Thank you.

4            THE COURT:  Mr. Fields, do you have any questions?

5            THE DEFENDANT:  No, sir.

6            THE COURT:  Ask the marshal to declare a recess.

7            (Proceedings adjourned at 3:54 p.m.)

8

9

10

11

12

13

14

15   "I certify that the foregoing is a correct transcript from

16   the record of proceedings in the above-entitled matter.

17

18

19   /s/Sonia Ferris                    May 6, 2020"

20

21

22

23

24

25
```