IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal Nos. 3:18-cr-11 |
| v. ) | |
| ) | |
| JAMES ALEX FIELDS, JR., ) | By:   Michael F. Urbanski |
| Defendant ) | Chief United States District Judge |

## ORDER

This case comes before the court on two motions regarding payment of defendant James Alex Fields Jr.'s monetary penalties, ECF Nos. 76, 79. The government has responded to Fields' motion, ECF No. 81. As part the criminal proceedings in this case, on September 18, 2019, Fields was ordered to pay a $2,900.00 special assessment, due immediately, a $2,900.00 fine, and non-federal restitution in the amount of $75,800.04. Am. J., ECF No. 63. Fields was ordered to pay equal monthly installments of $25.00 or 50 percent of his income while incarcerated toward the obligation. Id. Pursuant to this obligation, Fields has to date made six payments of $25.00 and one payment of $79.00. Payment History, ECF No. 76-4.

The government, upon discovering that Fields had approximately $759.86 in his Bureau of Prisons (BOP) trust account, filed a motion seeking an order authorizing the BOP to turn over $650.00 of the funds toward Fields' outstanding criminal monetary penalties.[1] ECF No. 76. At least $850.00 was transferred into Fields' account from individuals outside the prison. Inmate Detail Report, ECF No. 76-5. Pending resolution of this motion, the warden of Fields' facility has encumbered $759.86 of funds in the trust account.

---

[1] The government seeks only $650 of the trust account to leave Fields with approximately $100 in the account so that he can make phone calls and purchase necessary items.

Fields filed a motion seeking to reduce the payment requested by the government to $298.00. ECF No. 79. Fields alleges that he owes approximately $300.00 in institutional fines and that he will be unable to pay the institutional obligation if $650.00 is deducted from his trust fund account. Fields also argues that in order to be able to meet his financial obligations he needs to be able to make phone calls and purchase stamps and sundry items so that he can maintain contact with people who send him money. In addition, he needs to have some money in his account to file legal motions on his own behalf and to seek legal counsel. Id.

In its reply, the government agreed that Fields owes $311.00 in fines to the BOP due to institutional misconduct. Disciplinary History, ECF No. 81-1. However, the government contends that Fields' restitution and criminal penalties predate and have priority over the institutional fines, and that the government can seek the turnover of Fields' inmate trust account pursuant to 18 U.S.C. §§ 3613(a) & (f); 3664(n). ECF No. 81.

The purpose of an inmate trust account is to allow the BOP to maintain inmates' monies, including monies received from prison employment and outside sources, while they are incarcerated. See 28 C.F.R. §§ 506.1, 545.11. The government may enforce criminal monetary penalties, including an order of restitution "against all property or rights to property of the person fined." 18 U.S.C. §§ 3613(a), (f). Any fine, assessment, and restitution order imposed is a "lien in favor of the United States on all property and rights to property of the person fined." 18 U.S.C. § 3613(c). The government's lien thus attaches to Fields' interest in the funds held by the BOP in his inmate trust account. Because the property at issue is cash, it does not fall within any exempt category of property set forth in 18 U.S.C. § 3613(a)(1).

Additionally, "[i]f a person obligated to provide restitution, or pay a fine, receives substantial resources from any source . . . during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed." 18 U.S.C. § 3664(n). Courts agree that while accumulated prison wages are outside the scope of § 3664(n), "windfalls or sudden financial injections" or resources that become "suddenly available" are funds that qualify for turnover. United States v. Hughes, 914 F.3d 947, 951 (5th Cir. 2019); see also United States v. Poff, 781 F. App'x 593, 594 (9th Cir. 2019) (agreeing with the Hughes analysis); United States v. Kidd, 23 F.4th 781, 786–87 (8th Cir. 2022) (agreeing that §3664(n) does not apply to prison wages but disagreeing that the section applies only to "windfalls or sudden financial injections").

Here, individuals deposited $850.00 in several payments into Fields' trust account. These deposits clearly fall within the scope of § 3664(n) as "sudden financial injections" required to be applied to monetary penalties still owed by Fields. The $650.00 in funds at issue are currently in the government's possession and the government has a valid lien over the property. Furthermore, Fields has paid only $229.00 of the $2,900.00 special assessment to date, which was due immediately. The government can collect the funds at issue to be paid toward the special assessment due immediately, regardless of any existing monthly installment schedule for payment of the funds. See United States v. Hill, 706 F. App'x 120, 121 (4th Cir. 2017) (per curiam) (affirming the district court's decision to authorize BOP to turn over funds in defendant's trust account where restitution imposed was due immediately); see also United States v. Rush, No. 5:14-cr-00023, 2016 WL 3951224 at *3 (W.D. Va. July 20, 2016) (granting government's motion where criminal penalties imposed were due immediately).

3

The fact that Fields owes the BOP $311.00 in institutional fees does not preclude the government from obtaining the $650.00 from Fields' trust account. The $311.00 in fines Fields owes to the BOP were imposed for disciplinary offenses pursuant to 28 C.F.R. § 541.3. The BOP does not require inmates to transfer trust account funds to pay institutional fines. If not paid, the BOP can suspend commissary privileges until the fine is paid,[2] but such disciplinary fines are not enforceable as liens, nor due immediately as are criminal monetary penalties such as those imposed on Fields. To date, Fields has not released money to pay the disciplinary fines and as a result his trust account has been restricted since his first BOP fine on December 28, 2020. Thus, the government's lien against the funds in Fields' trust account enforcing his criminal monetary penalties have precedence and priority over any claim the BOP may have over the funds, or any interest Fields may have in retaining funds to pay the disciplinary fines imposed by the BOP.[3]

For these reasons, the court **GRANTS** the government's motion to authorize the BOP to turn over $650.00 in funds held in Fields' inmate trust account as payment toward the criminal monetary penalties imposed in this case, ECF No. 76. The court **DENIES** Fields' motion to reduce payment from his inmate trust account, ECF No. 79. The clerk is directed to send a copy of this order to the defendant.

---

[2] See Inmate Discipline Program, U.S. Dept. of Just., Fed. Bureau of Prisons, at 15 (eff. Aug. 1, 2011) ("The DHO may direct that an inmate pay a fine . . . . Commissary privileges should be suspended until the fine is paid. . . . This sanction cannot be used as a form of monetary restitution.").

[3] The court also notes that regarding Fields' argument that he needs to maintain funds in his prisoner trust account to correspond with people outside the prison, the BOP provides writing paper and envelopes at no cost to inmates. Also, when an inmate has neither funds nor postage to mail legal or personal mail, the BOP provides stamps for such mailings. 28 C.F.R. § 540.21(b), (d), (e).

4

It is so **ORDERED.**

Entered: March 6, 2023

Michael F. Urbanski
Chief United States District Judge

5